UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THAVONE SANTANA and ARRIE SPENCER,

                                    Plaintiffs,

                    v.

THE CITY OF NEW YORK, SGT. RITCHARD
BLAKE, and POLICE OFFICERS JOHN DOES # 1-3,

                                    Defendants.

**MEMORANDUM AND ORDER**

19-CV-211 (LDH) (RER)

LASHANN DEARCY HALL, United States District Judge:

Plaintiffs Thavone Santana and his mother, Arie Spencer, bring the instant action against the City of New York, John Doe Officers 1-3 (together the "City Defendants"), and former New York City Police Department ("NYPD") Sergeant Ritchard Blake, asserting claims pursuant to 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments to the United States Constitution.  Plaintiffs also assert various related state law claims.  City Defendants and Sergeant Blake each move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety.

## BACKGROUND[1]

On August 2, 2018, Santana left his apartment to purchase a charger from a convenience store near Livonia Avenue in Brooklyn, New York.  (Am. Compl. ¶ 22, ECF No. 23.)  While enroute, Santana encountered Blake, who was then an NYPD sergeant.  (*Id*. ¶¶ 15, 23.)  Blake believed Santana to be a repudiated gang member.  (*Id*. ¶ 26.)  According to the complaint, during the encounter, Blake believed that he was being confronted and threatened by Santana and that Santana was attempting to steal his cell phone.  (*Id*. ¶¶ 27–28.)  Plaintiff alleges that

---

[1] The following facts are taken from the first amended complaint and are assumed to be true for purposes of the instant motion.  (ECF No. 23.)

Blake also believed that, pursuant to his obligations as an NYPD sergeant, "[Blake] was required to use excessive force to prevent [] Santana from committing a crime and/or using deadly force against him." (*Id*. ¶ 29.) At some point during their encounter, Blake shot Santana twice with his department-issued firearm. (*Id*. ¶ 25.) One of the bullets struck Santana in the face. (*Id*.) Santana did not possess any weapons or attempt to steal Blake's cell phone at any time during their encounter. (*Id*. ¶ 32.)

As Santana lay choking on his shattered teeth and blood, Blake called for police backup, and identified himself as a police officer. (*Id*. ¶¶ 33–34.) Blake then searched Santana's person. (*Id*. ¶ 34.) Finding no weapon, Blake pulled knives from his own pocket and planted them on Santana. (*Id*.) Upon noticing surveillance cameras, Blake retrieved the planted knives from Santana's person. (*Id*. ¶ 35.)

Sometime after the shooting, John Doe Officers 1-3 arrived on the scene, where they handcuffed and arrested Santana for attempting to steal Blake's cell phone. (*Id*. ¶ 37.) Santana was then transported to Brookdale Hospital where he was hospitalized in critical condition for several weeks. (*Id*. ¶¶ 37, 48.) Since the shooting, Santana has undergone several surgeries and will likely need additional surgeries in the future. (*Id*. ¶ 50.) As of the filing of the amended complaint bullet remains lodged in Santana's neck; and his mouth remains wired shut, requiring him to receive the majority of his nutrients through a feeding tube. (*Id*. ¶¶ 51–52.)

Prior to the shooting, Blake had a history of violence and committing assaults, and was the subject of NYPD internal investigations in 2010, 2011, and 2016. (*Id*. ¶ 16.) Blake had been previously arrested, convicted, and placed on probation for violently beating his girlfriend. (*Id*. ¶ 18.) Blake had also been found guilty of and reprimanded for interfering with a department investigation, preventing the adjudication of summonses, and assaulting individuals. (*Id*. ¶¶ 19–

2

20.)  According to Plaintiffs, "the City was aware of Sgt. Blake's propensity for the conduct that

caused Plaintiff Santana's injuries and nonetheless hired and retained him while also issuing him

a firearm."  (*Id*. ¶ 21.)  Plaintiffs further allege, among other things, that Defendants failed to:

(1) address the history of alcohol abuse and violent behavior by police officers; (2) enact and

enforce policies that address the use and misuse of service weapons by police officers that are

not fit for duty; (3) adequately discipline, train or otherwise direct police officers with regard to

the consumption of alcohol off and on-duty; and (4) employ adequate policies and procedures

that address NYPD alcohol consumption and use of force.  (*See id*. ¶¶ 55–73.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  A claim is facially plausible when the alleged facts allow the court to draw a

"reasonable inference" of defendants' liability for the alleged misconduct.  *Id*.  While this

standard requires more than a "sheer possibility" of defendants' liability, *id*., "[i]t is not the

Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss.

*Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999).  Instead, "the

Court must merely determine whether the complaint itself is legally sufficient, and, in doing so,

it is well settled that the Court must accept the factual allegations of the complaint as true."  *Id*.

(citations omitted).

## DISCUSSION

Section 1983 creates a civil cause of action against a party "who, under color of any

statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be

subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.  To be actionable, the conduct the plaintiff complains of must have "been committed by a person acting under color of state law; and . . . deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).

"Courts have had frequent occasion to interpret the term color of law for the purposes of section 1983 actions, and it is by now axiomatic that under color of law means under pretense of law and that acts of officers in the ambit of their personal pursuits are plainly excluded." *Id*. (internal quotations omitted).  Notably, "there is no bright line test for distinguishing personal pursuits from activities taken under color of law." *Id*. at 548 (internal quotations omitted). While an officer's duty status is relevant in ascertaining whether the complained-of conduct occurred under color of law, it is not dispositive.[2] *Id*. at 548 ("[C]ourts look to the nature of the officer's act, not simply his duty status").  Indeed, the appropriate inquiry is not whether the officer was on duty at the time the conduct occurred, but whether, irrespective of his duty status, the officer can be said to have invoked the real or apparent authority of the police department. *Id*.  In conducting this inquiry, courts must assess the totality of the circumstances, considering

---

[2] The original complaint included an allegation that Blake was off duty at the time of his encounter with Santana. Plaintiff has omitted that allegation in the amended complaint, in what appears to be an attempt to avoid a potentially unfavorable allegation.  However, "where a Plaintiff contradicts the facts set forth in his original complaint," a court is authorized "to accept the facts described in the original complaint as true." *Colliton v. Cravath, Swaine & Moore LLP*, 08-CV-0400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d Cir. 2009).  Indeed, the fact that Blake was off duty at the time of the encounter is unavoidable as it is inextricably tied to—though not dispositive of—the parties' arguments on the issue of whether Blake acted under color of law.  Moreover, the parties' arguments center, in part, on this fact as discussed above.  (*See* Pls.' Mem. L. Supp. Opp'n Defs.' Mots. Dismiss ("Pls.' Opp'n") 6–8, ECF No. 39; Def. Blake Mem. L. Supp. Mot. Dismiss ("Blake Mem.") 5–10, ECF No. 38.)

> whether defendants identified themselves as police officers at any time during the incident; if plaintiff was aware that the defendants were police officers; whether defendants detained or questioned the plaintiff in the line of duty or scope of employment as police officers; if defendants drew a firearm or arrested the plaintiff; [and] whether defendants were engaged in any investigation or any aspect of the traditional public safety functions of police work.

*Claudio v. Sawyer*, 675 F. Supp. 2d 403, 407–08 (S.D.N.Y. 2009), *aff'd*, 409 F. App'x 464 (2d Cir. 2011).  Applying this approach, courts in this circuit have dismissed § 1983 claims for want of state action on facts similar to those present here.  For example, in *McElligott v. City of New York*, an off-duty, sleepwalking police officer kicked in the plaintiff's door and attacked the plaintiff while unconsciously acting out an arrest that he had conducted the previous day. *McElligott v. City of New York*, 15-CV-7107 (LGS), 2017 WL 6210840, at *2 (S.D.N.Y. Dec. 7, 2017).  The court dismissed the plaintiff's § 1983 claims finding that "[n]othing about the incident would have put [p]laintiff on notice that [her attacker] was a police officer." *Id*. at 4.  Specifically, the court reasoned that because the officer did not identify himself as a police officer, wear a uniform, question or attempt to handcuff the plaintiff, or draw a weapon, "[his] behavior was consistent with a home invasion or burglary, not a police encounter." *Id*.

In *Claudio v. Sawyer*, an intoxicated, off duty officer shot and murdered an individual following a traffic-related altercation. *Claudio*, 675 F. Supp. 2d at 405.  The plaintiffs, survivors of the decedent, filed a § 1983 action against the officer and the City of New York. *Id*.  The district court dismissed the action finding that because the plaintiffs failed to allege that the officer "sought in any way to invoke his authority as a police officer . . . the altercation was purely a private one." *Id*. at 405–06.  In so holding, the court highlighted that "[the officer] was off-duty, he did not display a badge, he did not identify himself as a police officer, and he never sought to arrest [the decedent]." *Id*.  Of particular relevance here, the court's conclusion was not altered by the fact that the firearm used in the incident was department issued. *Id*. at 409.

Indeed, the court stated that "even assuming that [the defendant] used his department-issued weapon in the shooting, courts require more to conclude that an officer was acting under color of law." *Id*.

Plaintiffs urge the Court to arrive at a different conclusion in this case, maintaining that the allegations that Blake shot Santana in self-defense and that the City has a practice of permitting officers with known alcoholism to "carry weaponry" bring Blake's conduct under the ambit of state action. (*See* Pls.' Mem. L. Supp. Opp'n Defs.' Mots. Dismiss ("Pls.' Opp'n") 7–11, ECF No. 39.)  The cases upon which Plaintiffs rely in support of their argument, are distinguishable, however.

In *Rivera v. La Porte*, the Second Circuit affirmed the jury's determination that an off duty officer acted under the color of law where, following a private traffic dispute with the plaintiff, the officer identified himself as a police officer, arrested the plaintiff, placed the plaintiff in an NYPD police car, and accompanied the plaintiff to the hospital, precinct, and central booking.  *Rivera v. La Porte*, 896 F.2d 691, 692 (2d Cir. 1990).  And, in *Davis v. Lynbrook Police Dep't*, the district court held that a reasonable jury could conclude that an off duty officer was acting under the color of law where the officer identified himself as an officer, drew his firearm, and interrogated the plaintiff, among other things.  *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 476 (E.D.N.Y. 2002).  Finally, in *DeVito v. Barrant*, the district court held that a reasonable jury could conclude that an off-duty officer invoked the actual or apparent power of the police where, in an attempt to apprehend the plaintiff, the officer chased the plaintiff, flashed his badge, and identified himself as a police officer.[3]  *DeVito v. Barrant*, 03-CV-1927, 2005 WL 2033722, at *1, 5 (E.D.N.Y. Aug. 23, 2005).

---

[3] Plaintiffs also cites *Isaacs v. City of New York* in support of their argument.  (Pls.' Opp'n 7.)  In that case, the plaintiff, an NYPD officer, filed a claim against the City of New York for indemnification pursuant to New York

Unlike the cases relied upon by Plaintiff, the complaint here does not include the sorts of facts that the courts relied on to find that the defendants acted under color of state law.  Plaintiffs do not allege, for example, that Blake wore a police uniform, attempted to arrest Santana, questioned Santana, or otherwise conducted himself in a manner that would have indicated to Santana that he was an officer.[4]  In other words, the complaint is devoid of any facts sufficient to allege that Blake "attempted to invoke the real or apparent power of the police" in any manner, as required to defeat Defendants' motion on this point.  That Blake is alleged to have acted in self-defense does not transform private conduct into state action.[5]

Because Plaintiffs have failed to sufficiently allege that Blake acted under the color of law, Plaintiffs § 1983 claims against Blake must fail.  And, given that a § 1983 claim for supervisory liability and *Monell* liability must be premised on an underlying constitutional violation by a state actor, Plaintiffs' claims against John Doe Officers 1-3 similarly fail.  *See Bastuk v. Cty. of Monroe*, 628 F. App'x 4, 6–7 (2d Cir. 2015) (stating that because there was no constitutional violation, the plaintiff had failed to state a claim on a theory of supervisory liability); *Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999) ("Of course, for a supervisor to be liable under Section 1983, there must have been an underlying constitutional deprivation.").

General Municipal Law section 50-k(3).  *Isaacs v. City of New York*, 17-CV-03957, 2019 WL 1208787, at *1 (E.D.N.Y. Mar. 13, 2019 ).  The complaint included allegations that while off duty, the officer shot the decedent who had approached the officer's vehicle, threated to kill the officer, and reached into the officer's vehicle and struck him in the face, and who the officer believed had recognized him from a prior arrest, or was attempting to steal his car.  *Id*. at *5–6. The court found that held that those allegations "help[ed] to support [the plaintiff's] contention that he feared [that the defendant] may have recognized him as a police officer or intended to steal his car, linking his subjective motivation and internal concerns to Small's external behavior."  *Id*.  The court held that the plaintiff had sufficiently stated a claim for indemnification because he sufficiently alleged that he was acting within the scope of his employment.  *Id*. *6.  This of course is a separate inquiry than that required to determine whether an individual was acting under color of state law for purposes of *Monell* liability.  Applying the appropriate factors applicable to this case, as articulated above, Blake was not acting under color of law.
[4] As in Claudio, the fact that Blake used a department issued firearm is of no consequence.
[5] Allegations that the city had a practice or policy of allowing officers known to suffer from alcoholism has no bearing on whether Blakes conduct can be deemed state action.  Rather, these allegations, would bear on whether Plaintiff has sufficiently alleged a claim under *Monell*, which as discussed below, Plaintiff has not.

*        *        *

Having dismissed all of Plaintiffs' federal claims, the Court declines, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over Plaintiffs' state law claims.  *See Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008)) ("We have said that if a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'"); *see also First Capital Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004) ("The exercise of supplemental jurisdiction is left to the discretion of the district court[.]").

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the complaint for failure to state a claim are GRANTED.  Accordingly, Plaintiffs' complaint is dismissed in its entirety.

SO ORDERED.

Dated:  Brooklyn, New York          /s/ LDH_____
        November 19, 2020          LASHANN DEARCY HALL
                                   United States District Judge

8